## S. J. McLeod v. Andrews & Johnson Company.

### Gen. No. 11,548.

1. OFFER OF PROOF—*when, essential to support assignment of error.* Where objections to questions have been made and sustained, and the proof desired to be introduced does not otherwise appear, it is essential that an offer of proof be made, as the basis of an assignment of error.

2. MERCHANDISE—*when defects of, cannot be interposed as a defense to 'a suit for the purchase price.* Where the vendee had an opportunity to but did not inspect the merchandise in question, he thereafter becomes estopped to complain of defects plainly visible to a casual observer.

Action of assumpsit. Appeal from the Circuit Court of Cook County; the Hon. RICHARD S. TUTHILL, Judge, presiding. Heard in this court at the October term, 1903. Affirmed. Opinion filed October 31, 1904.

MUSGRAVE, VROMAN & LEE, for appellant.

FASSETT & ANDREWS, for appellee.

MR. JUSTICE BALL delivered the opinion of the court.

Appellee brought an action in assumpsit against appellant upon the following written order:

"CHICAGO, Nov. 4th, 1899.

"*Mr. Andrews & Johnson,*

| Quantity. | Please deliver the following goods: |
|---|---|
| 250 | Ft. 16 in. No. 18 gauge riveted pipe, new and in first-class condition, including riveting of 13 prs. flanges to be furnished by us, price for the above 93c per ft. including riveting on of flanges, the above to be furnished as soon as possible not to exceed 30 days. |

S. J. McLEOD,
per McHugh."

The trial resulted in a verdict and judgment in favor of appellee for the sum of $253.88. Appellant perfected an appeal to this court.

The evidence shows that McHugh acted for appellant and Andrews for appellee in this matter. After the receipt of the order and within the time limit fixed therein the pipe was manufactured. The job was a good one, if the pipe was not to be subjected to pressure. After the work was done Andrews asked McHugh to come up or to send some one up to inspect the pipe, and McHugh said he would do so. There is no evidence of inspection, but within a few days subsequent to this interview appellant took the pipe away and sent it to a customer residing at Butte, Montana. No objection was made to the manner in which this pipe was manufactured until about thirty days after appellant had taken possession of it, when McHugh told Andrews that the pipe was shipped out to the mines and did not-fill the bill; it would not do the work required of it; it would not stand the pressure required. Andrews replied that the pipe was not pressure pipe; that there was nothing said about pressure pipe. McHugh declared that pressure pipe was mentioned in their original conversation,

and Andrews again denied it.    At the request of McHugh, Andrews went to appellant's office and there met the customer, a Mr. Day, for whom, as McHugh said, the pipe had been ordered.    Day said the pipe would not stand fifteen pounds pressure, to which Andrews replied, " No, it was not made for that."    Andrews was then asked what he would make pressure pipe for, and he answered that he had no facilities for making pressure pipe; didn't do that kind of business.    Appellee did not know where this pipe was going, except that McHugh said it was going out of the city for mining purposes.    It seems that there are two ways of ventilating mines by the use of pipes.    In each case the pipe comes up through the shaft from the mine level.    In one way the draft is produced by a fire below, in which case there is no pressure on the pipe.    In the other way the current is produced by a pressure engine attached to the pipe, and thereby pressure is exerted on the pipe.

Appellant offered to prove by McHugh and by Miller what was said between McHugh and Andrews at the time the contract for this pipe was entered into.    Objection was made to each of the questions calling for this conversation, and sustained, and an exception taken.    But in neither instance did appellant offer to prove what that conversation was.    In this state of the record, we cannot tell what counsel desired to prove, and therefore cannot say that the court committed reversible error in sustaining these several objections.    Howard v. Tedford, 70 Ill. App. 660; Berkowsky v. Cahill, 72 Ill. App. 101; Nonotuck v. Levy, 75 Ill. App. 56; Maxwell v. Habel, 92 Ill. App. 510; Boyd v. W. Chicago St. Ry. Co., 112 Ill. App. 50; Ittner B. Co. v. Ashby, 198 Ill. 562.

It is unnecessary for us to decide whether or not oral evidence was admissible to explain or add to the written order, for the reason that appellant, having an opportunity to inspect this pipe, accepted it without inspection.    The defects of which complaint is here made were plainly visible. · Those defects are that the rivets were too far apart and that the seams were not fully closed.    These defects were

apparent to even a careless observer. Instead of calling attention to them at a time and place when and where they might have been remedied, appellant took possession of the pipe without complaint, exercised acts of exclusive ownership over it, and shipped it more than a thousand miles away from the place of its manufacture. By so doing appellant is estopped to make the defense here interposed. In Benjamin on Sales, p. 688, sec. 703, 6th Am. ed., it is said : " When goods are sent to a buyer on performance of the vendor's contract, the buyer is not precluded from objecting to them by merely receiving them; for receipt is one thing and acceptance another. But receipt will become acceptance if the right of rejection is not exercised within a reasonable time, or if any act be done by buyer which he would have no right to do unless he were owner of the goods."

In Barker v. Trumbull, 51 Ill. App. 227, 229, it is said : " This court held in Eureka Cast Steel Co. v. Morden Frog Works, 23 Ill. App. 591, that in the absence of fraud or latent defects the acceptance of an article sold upon an executory contract after an opportunity to examine it, amounted to an agreement that the article conformed to the contract and was satisfactory, and barred all claim for compensation for defects existing in the article. Where there has been an acceptance after an opportunity to inspect the goods delivered under an executory contract, damages because of the inferior quality of the accepted goods cannot be recouped in the absence of proof of fraud, or express warranty by the vendor, or of latent defects incapable of discovery or inspection. Titley v. Enterprise Stone Co., 127 Ill. 457; Norton v. Dreyfuss, 106 N. Y. 90."

In Studer v. Bleistein, 115 N. Y. 317, it is held that an acceptance by a vendee of goods manufactured for him, after a full and fair opportunity of inspection, estops him in the absence of fraud from afterwards raising any objection as to visible defects and imperfections of the articles so accepted.

In Pierson v. Crooks, 115 N.Y., p. 539, the syllabus, which

concisely states the law of the case on this point, reads as follows: "Under an executory contract for the sale and delivery of goods of a specified quality, in the absence of an express warranty, the quality is part of the description of the goods, and the vendor is bound to furnish articles corresponding therewith. If articles of an inferior quality are tendered, the purchaser is not bound to accept, but if he does, he is, in the absence of fraud, and so far as defects open and ascertainable at the time are concerned, deemed to have assented that they correspond with the description, and is concluded from subsequently questioning them."

We have examined the record and are satisfied thereby that all of the evidence presented to the trial court is before us. Marine Bank v. Rushmore, 28 Ill. 469; Mullin v. Johnson, 98 Ill. App. 621; Henline v. Brady, 110 Ill. App. 75.

Finding no substantial error in this record, we affirm the judgment of the Superior Court.

*Affirmed.*